1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3

4

PETROLEUM SALES, INC.,                                        No.  C 05-3526 SBA

Plaintiff,                        **ORDER**

5

6

v.                                            [Docket Nos. 101, 137]

7

VALERO REFINING COMPANY -
CALIFORNIA , *et al.*,

8

Defendants.

9

10

        Plaintiff Petroleum Sales, Inc. has filed a motion for *de novo* review [Docket No. 137] of

11

defendant's motion for attorney fees [Docket No. 101], requesting the amount of these fees be reduced

12

from $423,144.50 to $180,000 or less.  After reading and considering the arguments presented by the

13

parties, the Court finds this matter appropriate for resolution without a hearing.  *See* FED. R. CIV. P. 78.

14

For the reasons that follow, the motion for *de novo* determination of attorney fees is GRANTED.  It is

15

further ordered that the motion for attorney fees is GRANTED consistent with the analysis of this order.

16

17

                                        **BACKGROUND**

18

        The plaintiff in this case is a California corporation called Petroleum Sales, Inc. (PSI) which

19

owns and operates four gasoline services stations in the San Francisco Bay Area.  The defendants are

20

the Valero Refining Company - California and the Valero Marketing and Supply Company, two wholly

21

owned subsidiaries of the Valero Energy Corporation, a Delaware-based entity (collectively "Valero").

22

        This case arises out of a dispute between PSI and Valero over contracts between the two

23

companies that required PSI to utilize a particular credit card billing system.  The contracts, part of a

24

broad franchise agreement that included supply and equipment provisions, included a waiver of

25

consequential damages, a discretionary reimbursement of repair fees to PSI, and a provision for the

26

reimbursement of attorney fees.  *See* Docket No. 1, Ex. 2,3.

27

        Problems first arose when Ben Shimek, a principal officer of PSI and the man who first formed

28

the company with his wife, began questioning the speed at which Valero's credit card billing system

processed credit card payments.  Shimek Decl. at ¶ 16.  After noticing his customers become frustrated with the delay in credit card processing, Shimek spoke with several Valero officials and threatened to stop using the Valero card system, even though PSI was obligated to use the system under the franchise agreement.  Phelps Decl. Ex. G at 52-54; *see* Docket No. 1, Ex 3, § 5.2.  Although the card system was upgraded, Shimek decided to use a different company for credit card processing.  Shimek Decl. at ¶ 23; Phelps Decl. Ex. J at 184-185.  In late 2003, Valero notified PSI of its breach of the franchise agreement and began holding back its "facility allowance" payments, which reimbursed gas station operators for equipment repairs and/or replacement.  Phelps Decl. Ex. O.  Valero resumed its facility allowance payments to PSI in December 2004.  Phelps Decl. Ex. J at 198.

Valero filed a summary judgment motion on October 27, 2006.  *See* Docket No. 56.  That motion was granted on December 14, 2006.  *See* Docket No. 96.  On December 28, 2006, Valero filed a motion as well as a Bill of Costs with the Clerk requesting $9,470.65.  *See* Docket No. 101.  On Jan. 24, 2007, the Clerk taxed costs in the full amount sought by Valero.  *See* Docket No. 107.  Since PSI did not file a motion for review of costs under Civil Local Rule 54-5, that award is final.  The motion for attorney fees was referred to Magistrate Judge Joseph C. Spero on March 1, 2007.  *See* Docket No. 120.

**A.**     **Motion for Attorney Fees**

In its motion for attorney fees, Valero directed the court's attention to two provisions in the franchise agreements between Valero and PSI.  The first can be found in Article 26 of the Contract Dealer Account Supply Agreement:

> In the event of any lawsuit between Valero and Dealer arising out of or relating to the transactions or relationship contemplated by this SUPPLY AGREEMENT (regardless of whether such action alleges breach of contract, tort, violation of a statute or any other cause of action), the substantially prevailing party shall be entitled to recover its reasonable costs of suit including its reasonable attorneys' fees. If a party substantially prevails on some aspects of such an action but not others, the court may apportion any award of costs or attorneys' fees in such manner as it deems equitable.

Phelps Decl., Ex. A.

Valero also cites Article 19 of the Contract Dealer Account Identifications and Equipment

2

Agreement, which provides:

> DEALER will promptly reimburse Valero on demand for all costs, fees (including attorneys' and experts' fees) and expenses incurred by VALERO in enforcing its rights or remedies under this ID & EQUIPMENT AGREEMENT.

*Id*.  Valero sought $422,077.00 in fees incurred by attorneys Robert C. Phelps, Ranah L. Esmaili, Elizabeth Stone,and Bruce McDiarmid.  *See* Docket No. 103, ¶ 7.  All are attorneys with Pillsbury Winthrop Shaw Pittman LLP.  Valero sought additional fees for work by Brendan Patrick and Tim Mayfield, who provided litigation support, and for work by paralegals Robert D'Arcy and Donna Hunter.  *Id.* at ¶ 17.

In its opposition, PSI did not dispute that Valero, as the prevailing party, was entitled to its reasonable fees and costs under the contractual provisions cited above.  *See* Docket No. 109.  It argued, however, that the fees sought were excessive because the rates charged were too high and the time spent was unreasonable.  *Id.*

At oral argument, the court requested an additional declaration from Valero providing a breakdown of the hours billed by each attorney and the rates at which these hours were billed.  When this new breakdown contained a final figure different from Valero's first request for fees, the court sought further clarification.  *See* Docket Nos. 124, 128.

The court's task proved particularly difficult for Valero, which submitted final fees that did not match earlier submissions.  At one point, Valero attributed the errors to a failure to include attorney Bruce McDiarmid's time spent on the case; at another time, Valero stated the discrepancy was due to some charges being "written off."  *See* Docket Nos. 128, 135.

Eventually the court was able to collect enough attorney fee information from Valero and on June 28, 2007, the Magistrate Judge issued his report recommending that Valero be awarded a total of $398,470.91 in attorney fees and costs.  About two weeks later, on July 11, 2007, PSI filed a motion for a *de novo* determination of Valero's request for attorney fees.  *See* Docket No. 137.  While PSI did not challenge the bill of costs or Valero's assertion that at least some fees are owed, it did take issue with the manner in which the amount of the attorney fees was determined.  *Id.*  PSI believes these fees

1   should, at the most, be capped at $180,000, or, in the alternative, that Valero's attorney fee request

2   should be denied outright.

3       The sole issues before the Court are whether PSI's motion for a *de novo* determination of

4   Valero's request for attorney fees should be granted, and, if so, what is the reasonable amount of those

5   fees.

6

7                                    **LEGAL STANDARDS**

8       Federal Rule of Civil Procedure 54(d)(2)(A) states that claims for attorneys' fees "shall be made

9   by motion unless the substantive law governing the action provides for the recovery of such fees as an

10  element of damages to be proved at trial."  The Rule further declares that the district court "may refer

11  a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial

12  matter."  FED. R. CIV. P. 54(d)(2)(D).

13      Rule 72(b) requires the magistrate judge to "enter into the record a recommendation for

14  disposition of the matter, including proposed findings of fact when appropriate."  The Rule clarifies the

15  district court's standard of review:

16          The district judge to whom the case is assigned shall make a de novo determination upon
            the record, or after additional evidence, of any portion of the magistrate judge's
17          disposition to which specific written objection has been made in accordance with this
            rule. The district judge may accept, reject, or modify the recommended decision, receive
18          further evidence, or recommit the matter to the magistrate judge with instructions.

19  FED. R. CIV. P. 72(b).

20      As PSI has made specific written objections to the Magistrate Judge's recommendation, the

21  Court grants PSI's motion for *de novo* review and will conduct a *de novo* determination of the motion

22  for attorney fees.

23      The Local Rules set forth what the moving party must include in its request for attorney fees,

24  such as a statement that counsel for both parties have "met and conferred," a statement of services

25  rendered and a brief description "of relevant qualifications and experience . . . of each person" who has

26  worked on the case.  N.D. CAL. CIV. R. 54-6(b)(1), (2), (3).

27

28                                          4

Attorney fees are calculated using the "lodestar" approach, which the United States Supreme Court explains is a number achieved by "multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986); *see Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). There is a strong presumption that the lodestar figure is reasonable. *Morales v. City of San Rafael*, 96 F.3d 359, 364, n.8 (9th Cir. 1996). After the lodestar has been calculated, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[1] *Id.* at 363-364.

The court must use its discretion in determining a reasonable hourly rate that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," but it is the fee applicant's burden to produce satisfactory evidence to assist the court in its assessment. *Blum v. Stenson*, 465 U.S. 886, 896 (1984); *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983). "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The court may adjust the reported hours if it finds that they are unreasonably excessive, redundant, or otherwise unnecessary. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted).

---

[1] The 12 factors discussed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. The five factors presumed to be accounted for in the lodestar figure are: (1) the novelty and complexity of issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement. *Morales*, 96 F.3d at 364, n.9.

5

**ANALYSIS**

As an initial matter, PSI claims the Magistrate Judge erred in admitting some of Valero's evidence – namely, a 2006 survey conducted by PricewaterhouseCooper (2006 Survey) that compares hourly billing rates among 33 large San Francisco area firms. *See* Docket No. 116, Ex. A.  Since the 2006 Survey was first introduced in Valero's reply to PSI's opposition to the attorney fee request, PSI argues that it should have been given a chance to respond to this new evidentiary material, or else the survey should never have been placed into the record. *See* Docket No. 137, at 4.  Because PSI has expressly stated its objections to the report in its request for review of the recommendation, the issue of whether PSI has had an adequate chance to respond to the 2006 Survey is now moot. *See* Docket No. 137, at 4-5.  The Court will review PSI's objections to the 2006 Survey in its *de novo* determination of attorney fees.

**A.      Reasonableness of Fees**

PSI does not contest that Valero is entitled to reasonable attorney fees under the terms of the franchise agreements signed by both parties.  Nor does the plaintiff contest its obligation to pay the costs of expert witness fees or the bill of costs filed with this Court. *See* Docket No. 105.  The dispute boils down to a contention over how attorney fees are determined for this type of case in the San Francisco area, and what is a reasonable amount of time spent on legal duties involved in such a case.  Valero asserts that its attorney fees amount to $423,144.50. *See* Docket No. 104 at 79.  In its motion for *de novo* review, PSI claims Valero's attorney fees should be "no more than $180,000." *See* Docket No. 137 at 8.

**1.      Attorney Fees**

A threshold question is whether Valero has met its evidentiary burden to prove what constitutes a reasonable fee paid to an attorney in the San Francisco marketplace for work on a case such as the one at bar.  The "burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community

for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895, n.11 (1984); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). To support its fee motion, Valero has offered proof that can be categorized into three sets of documents: (1) declarations of its attorneys, (2) copies of bills actually paid by Valero, and (3) a 2006 Survey of legal rates charged by large law firms in the San Francisco area that are comparable to that of Valero's counsel. *See* Docket Nos. 103, 104, 116, Ex. A.  Taken together, these documents satisfy Valero's initial burden to provide evidence of reasonable attorney fees.

PSI argues that Valero fails to meet its burden because part of its evidence – the 2006 Survey of "mega-firms" – has no relevance to what typical attorneys charge in the Northern District of California, which is the appropriate marketplace for gauging the reasonableness of fees in this case. *See Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  Much of PSI's argument rests upon the reasoning in *Yahoo! Inc. v. Net Games, Inc.* 329 F. Supp. 2d 1179, 1183 (N.D. Cal. 2004), where the court explained that "fee applicants are entitled to an award sufficient to enable them to secure reasonably competent counsel, but are not entitled to an award necessary to secure counsel of their choice."[2]

PSI overlooks the much-cited reasoning of the Supreme Court in *Blum*.[3]  In that case, the Court concluded that attorney fees are reasonable if they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 895, n. 11; *Chalmers,* 796 F.2d at 1210; *Jordan*, 815 F.2d at 1263.  The 2006 Survey is relevant because it sheds light on lawyers of "comparable skill, experience and reputation" to those employed

---

[2]   The *Yahoo!* court bases its reasoning on the Supreme Court decision in *Venegas*, which interpreted attorney fees under 42 U.S.C. § 1988.  Even though the attorney fee provision in our case is found in a private contract rather than a federal statute, this difference is indistinguishable in an analysis of the reasonableness of such fees.

[3]   The statement in *Yahoo!* is arguably inconsistent with the Supreme Court's reasoning in *Blum*. The words in *Blum* that attorney fees are reasonable if they parallel "lawyers of reasonably comparable skill, experience and reputation" is in tension with *Yahoo!*'s statement that "[t]he experience of plaintiff's counsel and the high fees charged by elite segments of the bar . . . simply do not bear on the amount of a 'reasonable fee.'" *Yahoo!*, 329 F. Supp. 2d at 1188.

by Valero.  The defense counsel in this case was Pillsbury Winthrop, a large San Francisco area firm whose reputation arguably ranks high in the eyes of the community due to its size and experience.

To rebut the 2006 Survey, PSI uses its own survey to establish what a "reasonable fee" means in the San Francisco area.  *See* Docket No. 110, Ex. C.  The survey, compiled by the Pennsylvania consulting firm Altman Weil, Inc., categorizes attorney billing rates by region and state.  *Id.*  The survey, however, fails to address what lawyers in antitrust matters charge in the San Francisco area.  The broad geographic regions sketched in the survey -- the "Pacific" region in one spot, the entire state of California in another -- fail to mount an adequate rebuttal to the presumption that the lodestar figure is reasonable.[4]  *See Morales,* 96 F.3d at 364 n. 8.  Since the 2006 Survey is relevant to the fee analysis and the Weil survey is too broad to rebut the information in the San Francisco report, Valero has met its burden of proof establishing the reasonableness of its fees.

### a.    Robert Phelps

Valero seeks an hourly rate between $515 and $575 for partner Robert Phelps.  *See* Docket No. 103, ¶ 12.  Phelps graduated from the University of Minnesota Law School in 1982 and was admitted to the California Bar in the same year.  *Id.*  He has worked on cases involving antitrust matters and unfair business practices throughout his entire career, and for the past 15 years has specialized in representing oil companies in franchise, antitrust, and unfair business practice cases as they relate to service station operations.  *Id.* at ¶ 13.  He has written an article on Business and Professions Code Section 17200 that was published in a state bar law journal.  *Id.* at ¶ 14.

The 2006 Survey shows that, among the 33 large San Francisco firms comparable to Valero's counsel, the median billing rate for an equity partner with 21 to 25 years of experience is $560.  *See* Docket No. 116, Ex. A.  This evidence, combined with Phelps's experience and the complexity of this case, establishes that the rates charged by Phelps in this case are reasonable for the lodestar calculation.

---

[4]    PSI also does not explain why the Weil survey is more applicable than the PricewaterhouseCooper survey to the "relevant marketplace, the Northern District of California."  *See* Docket No. 137 at 5.  Neither survey contains data that perfectly overlaps the geographic area of the Northern District.

1

2          **b.      Ranah Esmaili**

3          Valero seeks between $235 and $365 per hour for work by associate Ranah Esmaili.  *Id*. at ¶ 15.

4  This includes charges of $235 per hour for the year 2005, $320 per hour from January to July 2006, and

5  $365 per hour from August 2006 onward.  *See* Docket No. 135, Ex. A.  Esmaili is a 2004 graduate of

6  Boalt Hall School of Law with a joint M.A. degree in International Relations and International

7  Economics from the Paul H. Nitze School of Advance International Studies at Johns Hopkins

8  University.  *See* Docket No. 103, ¶ 15.

9          The 2006 Survey indicates the median billing rate of an associate who graduated in 2004 is $289

10  per hour.  *See* Docket No. 116, Ex. A.  While the record shows Esmaili holds impressive academic

11  credentials, it also reveals she has limited or no experience in actual litigation involving unfair business

12  practices in the petroleum industry or in complex antitrust matters.  Additionally, Valero has offered no

13  other proof justifying an increase in Esmaili's billing rate above the median rate for large San Francisco

14  firms.  For these reasons, Valero will be awarded fees for  Esmaili at a rate of $235 per hour for the year

15  2005 and $289 -- the median found in the 2006 Survey -- for the year 2006.

16          **c.      Elizabeth Stone**

17          Valero seeks $265 per hour for the work of associate Elizabeth Stone.  *See* Docket No. 135, Ex.

18  A.  Stone is a 2005 graduate of the Hastings College of the Law and licensed to practice law in

19  California.  *See* Docket No. 103 at ¶ 16.  The 2006 Survey indicates the median billing rate for a 2005

20  graduate is $256 per hour.  *See* Docket No. 116, Ex. A.  Since Valero provides no reason why Stone

21  should command a rate higher than the median, Valero will be awarded fees for Stone at a rate of $256

    per hour.

22          **d.      Bruce McDiarmid**

23          Valero seeks from $655 per hour to $740 per hour for the work of Bruce McDiarmid.  *See*

24  Docket No. 135, Ex. A.  A graduate of Harvard Law School in 1974, McDiarmid is the leader of

25  Pillsbury Winthrop's Franchising and Distribution Practice Team.  *See* Docket No. 103, ¶ 21.  He

26  represented Valero in pre-litigation negotiations that led to Valero's decision to temporarily stop

27

28                                                     9

1   payments of Facilities Allowances to PSI.  *Id.* at ¶ 20.

2        The 2006 Survey indicates a median billing rate of $616 for senior equity partners with 31-35

3   years of experience.  *See* Docket No. 116, Ex. A.  While McDiarmid's qualifications and experience

4   may reasonably place him in a higher billing bracket, the defendants offer no justification for why

5   McDiarmid's rate was $740 per hour, nor a reason for an upward departure of Valero's own evidence

6   of what is a reasonable rate of $616.  Accordingly, Valero will be awarded fees for McDiarmid at a rate

7   of $616 per hour.

8            **2.        Paralegals and Litigation Support**

9        Valero asserts that it should be awarded fees for litigation support at $200.00 per hour and for

10  paralegals at a rate of between $125.00 per hour and $185.00 per hour.  *See* Docket No. 135, Ex. A.  The

11  Court agrees with the Magistrate's finding that, other than the statements in the Phelps Declaration that

12  these are the rates Pillsbury Winthrop actually charges, there is no evidence in the record showing

13  whether the rates are reasonable.  *See* Docket No. 103, ¶ 17.  The 2006 Survey includes no figures for

14  litigation support because of insufficient data.  It also does not list paralegals.

15       Furthermore, Valero has presented no evidence supporting awarding fees at a higher rate for

16  litigation support than for paralegals.  Under these circumstances, the Court agrees with the Magistrate

17  that we must look to other cases in this district to determine a reasonable rate to be applied to all non-

18  attorneys who worked on the case.  *See United Steelworkers of Am.*, 896 F.2d at 407 (rate

19  determinations in other cases may be considered in determining reasonable rate).

20       Based on the Court's review of the case law, the Court the rate for all hours billed by paralegals

21  and litigation support personnel will be set at $120.00 per hour.  *See Young v. Polo Retail*, 2007 WL

22  951821 (N.D. Cal. Mar. 28, 2007) (awarding paralegal fees at a rate of $120.00 per hour); *Safeco Ins.*

23  *Co. of Am. v. Chiang*, 2007 WL 460844 (N.D. Cal. Feb. 7, 2007) (awarding paralegal fees at a rate of

24  $115.00 per hour); *Garnes v. Barnhardt*, 2006 WL 249522 (N.D. Cal. Jan. 31, 2006) (awarding

25  paralegal fees at a rate of $117.00 per hour).

26

27

28                                                      10

1  **B.       Reasonableness of Time**

2        PSI argues that the hours billed should be reduced on the following grounds: (1) the amount of

3  time spent on the summary judgment motion was excessive, (2) the amount of time spent on document

4  production was unreasonable, and (3) use of block billing makes it impossible to determine whether

5  some of the time billed is reasonable.

6        **a.       Summary Judgment Motion**

7        PSI asserts that the time spent on the summary judgment motion is excessive: while 151.3

8  hours were billed for the summary judgment motion, a reasonable amount of time for the motion

9  would have been 80 hours.  *See* Docket No. 110, ¶ 12.  The Court agrees with the Magistrate's decision

10 that the summary judgment motion addressed numerous and complex legal issues, and was supported

11 by extensive evidentiary submissions.  *See* Docket Nos. 56-72.  The Court therefore finds that the time

12 sought by Valero for work on the summary judgment motion should be awarded in full.

13       **b.       Document Production**

14       PSI argues that Valero has billed excessive time – a total of 318 hours – for document

15 production.  *See* Docket No. 110., ¶ 13; Docket No. 103, ¶ 7.  In support of this contention, PSI notes

16 that Valero produced 430 documents – about 4,000 pages worth of documents – indicating that Valero

17 billed 45 minutes for each document produced.  *Id.*  The Court agrees with the Magistrate's decision that

18 time spent on document production involves not only the documents that were actually produced but

19 also review of potentially responsive documents to determine whether they should be produced.  Given

20 the large number of document requests by PSI, many of which were broadly phrased, and in light of the

21 piecemeal manner in which the process occurred, the Court will award the amount requested by Valero

22 in full.

23       **c.       Block Billing**

24       PSI asserts that Valero's attorney fees should be reduced because block billing makes it

25 impossible to determine the reasonableness of some of the time billed.  The Ninth Circuit has held that

26 a fee award may be reduced when block billing – the lumping together of multiple tasks in a single time

27

28                                    11

entry – makes it impossible to determine the reasonableness of the time spent on each task.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).  Pillsbury Winthrop's time sheets do include some block billing.  *See* Docket No. 103, Ex. B.  While not all of these entries are problematic, five problematic instances of block billing are the entries by Esmaili for 4.3 hours on May 1, 2006; 4.5 hours on June 15, 2006;  2.4 hours on August 8, 2006; 5 hours on August 9, 2006; and 6.9 hours on August 10, 2006.  The Court will therefore exclude the total of this time (23.1 hours) from the lodestar.

## C.      Calculation of the Lodestar

In calculating the lodestar, the Court takes as its starting point the total fees documented in the time sheets provided in support of the motion, which reflect fees of $423,144.50.  *See* Docket 104, at 79.  The Court has reviewed these time sheets carefully and, with the exceptions discussed above, finds the time sought to be reasonable under the circumstances.

The Court next factors in the reductions discussed above.  The Court calculates the lodestar by subtracting the following amounts from $423,144.50:

1. **$165.10** to reflect the reduction in McDiarmid's rate from $655.00 per hour and then $740.00 per hour to $616.00 per hour.
2. **$78.00** to reflect the reduction in Robert D'Arcy's rate from $185.00 per hour to $120.00 per hour.
3. **$5,219.50** to reflect the block billings by Ranah Esmaili after August 1, 2006, which were billed at a rate of $365.00 per hour.
4. **$2,816.00** to reflect the block billings by Ranah Esmaili in May and June 2006, which were billed at a rate of $320.00 per hour.
5. **$6,277.50** to reflect the reduction in Ranah Esmaili's rate from $320.00 per hour to $289.00 per hour for time billed in the first half of 2006.
6. **$15,025.20** to reflect the reduction in Ranah Esmaili's rate from $365.00 per hour to $289.00 per hour for time billed from August 1, 2006 onward.
7. **$47.50** to reflect the reduction in Donna Hunter's rate from $125.00 per hour to $120.00 per hour.
8. **$240.00** to reflect the reduction in Tim Mayfield's rate from $200.00 per hour to $120.00 per hour.
9. **$5,416.00** to reflect the reduction in Brendan Patrick's rate from $200.00/hour to $120.00 per hour.
10. **$297.90** to reflect the reduction in Elizabeth Stone's rate from $265.00 per hour to $256.00 per hour.

The total reductions amount to **$35,582.70**.  Subtracting this amount from $423,144.50, comes to **$387,561.80**.

12

1

### CONCLUSION

2        Accordingly, PSI's motion for *de novo* review of attorney fees [Docket No. 137] is GRANTED.

3    Valero motion for attorney fees [Docket No. 101] is GRANTED as modified and Valero is awarded a

4    total of $387,561.80.  This amount does not include $4,453.81 in expert witness deposition fees and the

5    bill of costs submitted to the Court, since these fees were not at issue in this *de novo* review.

6        IT IS SO ORDERED.

7

8    September 11, 2007                                Saundra B Armstrong
                                                       Saundra Brown Armstrong
9                                                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                13